404 So.2d 213 (1981)
STATE of Louisiana
v.
Joseph ALPINE.
No. 80-KA-2849.
Supreme Court of Louisiana.
September 8, 1981.
Rehearing Denied October 9, 1981.
*214 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, William Wynne, Asst. Dist. Attys., for plaintiff-appellee.
Morris S. Borenstein, New Orleans, for defendant-appellant.
CALOGERO, Justice.[*]
Joseph Alpine was charged by Grand Jury indictment with the crimes of aggravated rape, aggravated crime against nature, and aggravated burglary, violations of R.S. 14:42, R.S. 14:89.1, and R.S. 14:60, respectively. A jury trial resulted in a unanimous verdict of guilty of forcible rape (R.S. 14:42.1) and in verdicts of guilty of aggravated crime against nature and guilty of aggravated burglary (by margins of eleven to one). Defendant was sentenced to serve 40 years on the first count, 15 years on the second, and 30 years on the third, the terms to run consecutively. After sentencing, the district attorney filed an habitual offender bill against defendant, pursuant to R.S. 15:529.1, in response to which the trial court set aside the original sentence, only to reimpose the identical sentences upon defendant as an habitual offender. On this appeal three arguments are presented by counsel relative to four assignments of error, in addition to arguments accompanying five assignments urged by defendant in proper person.
The facts of this case are as follows. In the early morning of August 19, 1978, a woman, who resided on St. Peter Street in New Orleans and who, for purposes of this opinion, shall be referred to as Jane Doe, was awakened in her bedroom by a man who threatened to kill her if she screamed. The stranger then told her that he wanted to rob her and that he would free her if she gave him money. With her hands held behind her by the intruder, Ms. Doe led him to money stashed in the pockets of several blouses hanging on the bathroom door. Defendant was given three bundles of small bills, each of which had previously been bound together by paper clips. The intruder then tied Ms. Doe's hands behind her back with a pair of pantyhose, threw her onto the bed, raped her, and placed his penis in her mouth. The victim submitted after being told that "if I didn't let him rape me, he'd kill me."
Meanwhile, the victim's next door neighbor, Ms. Inez Eagon, had been awakened by the sound of a barking dog. Looking out of her window, Ms. Eagon observed that the screen to the victim's kitchen window had been removed, that the window was open, and that a chair had been placed below the window. Upon seeing shadows on the victim's bedroom shade, Ms. Eagon summoned the police.
Several minutes later two squad cars of the New Orleans Police Department arrived on the scene almost simultaneously. The officers were informed of the situation by Ms. Eagon and immediately surrounded the house. The intruder, who had become aware of the presence of the police, ran toward the rear of the victim's house and emerged from the back door. The police confronted the suspect and began a concerted attempt to take him into custody, which attempt resulted in a running struggle between the suspect and several officers for a distance of approximately one block.[1] Finally, *215 the police were able to subdue the suspect, defendant Joseph Alpine, who was searched and found to be carrying three bundles of money bound by paper clips alleged to have been taken from the victim.
We find that seven of the defendant's eight arguments relative to his assignments of error are clearly non-meritorious and further that they involve issues governed by clearly applicable principles of law. Therefore, with the exception of assignment number 14 (argument number III), defendant's assignments of error will be treated in an appendix attached hereto, which remains part of the public record of this Court but which will not be published with this opinion. We now turn to assignment number 14 and its accompanying arguments, two of which were made at trial.
On September 14, 1978, defendant filed, pursuant to C.Cr.P. art. 717,[2] a pretrial Motion for Discovery and Inspection which requested from the state the defendant's "... New Orleans Police Department arrest and conviction record and the F.B.I. arrest and conviction record, and the Department of Corrections' records of discharge date of the defendant in the State's possession or custody." On the following day, the state filed an answer to the defendant's motion, indicating, more or less pro forma, that the state would comply with the request for defendant's records. The minutes of the court on that some day reflect that the defendant indicated before the judge that he was satisfied with the state's reply. The defense was not supplied with a record of the defendant's arrests and convictions prior to trial.
At trial, defendant chose to take the stand to relate to the jury his own version of the events of the night of the crime. On redirect-examination, in response to a question by defendant's own counsel, defendant testified that he had no criminal record.
After a short recess, the D.A. informed the court out of the hearing of the jury that the state had just received an F.B.I. rap sheet on the defendant, under the name of Oscar Lee Allen, detailing numerous felony convictions in California and in Texas. The prosecutor also revealed that it had run the name "Oscar Lee Allen" through the District Attorney's computer and learned that Allen[3] had served time at Angola and was wanted following probation revocation.
The state then requested permission to use this evidence on cross-examination, along with a recess in order to obtain the witnesses necessary to authenticate the arrest and conviction record. After an overnight recess the trial court, over defense objection, allowed the state to confront defendant with his criminal convictions on cross-examination.
At trial, defendant objected to this use of his prior convictions for two reasons. He first argued that R.S. 15:495[4] requires that before evidence of a former conviction can be adduced from any source other than the witness whose credibility is to be impeached *216 he must have been questioned on cross-examination as to such convictions and have failed distinctly to admit the same. He protested that defendant had not been confronted with such evidence on the state's initial cross-examination.[5]
The trial judge's response was to permit the defendant to take the stand and give additional testimony in chief before being exposed to the state's recross-examination with the aid of the defendant's conviction record. That permissible procedure obviated defendant's complaint. He did get the opportunity distinctly to admit the convictions both on the redirect and on the recross-examination.[6]
Defendant made an additional argument at trial urging that the state, in failing to inform counsel of the existence and receipt of the F.B.I. arrest record, effectively deprived defendant of his Fifth Amendment right against self-incrimination. Presumably, counsel means that had he been told the state knew of his conviction record he would have made a more intelligent choice and opted not to take the stand and testify. In brief, defendant expands on this argument and claims that he should be afforded a new trial because the state neglected to disclose its possession of his criminal record after receipt thereof and notwithstanding C.Cr.P. art. 729.3.[7] Article 729.3 requires that a party promptly notify the other party and the court of the existence of additional evidence discovered after compliance with an earlier discovery order. In support, counsel also cites State v. Meshell, 392 So.2d 433 (La.1980).
The merit of the foregoing argument, that the state prompted him to make an unintelligent decision to testify by neglecting to notify him promptly of the receipt of the criminal record, is governed by whether the state did or did not promptly notify him. The record does not contradict the state's position. The prosecutor stated that he had only received the record after defendant had testified on direct, cross and redirect-examination. Furthermore, an excellent indication that this was so was the fact that after defendant put his credibility at issue by testifying in chief the state on cross-examination did not confront him with his record, a significant trial tactic which was available to the state even though defendant, in chief, had not yet then volunteered the statement that he had never been convicted.
There is no doubt that defendant's prospect of acquittal was severely jarred by his having to admit that he had prior criminal convictions and that just the day before he had told this very jury that he had had none. Nonetheless, it was a turn of events *217 brought on, in part, by defendant's own lying on the witness stand and, in any event, without the state's having violated the discovery articles of the Code of Criminal Procedure.
Neither is there merit to defendant's argument in brief that the court should have excluded evidence of defendant's prior convictions from trial. While C.Cr.P. art. 729.3 imposes a duty upon a party to notify promptly the motioning party of the discovery of additional evidence subject to the art. 717 request, there is no duty on the part of the state to disclose information which it does not possess. Therefore, exclusion of the evidence is a sanction of C.Cr.P. art. 729.5 which is not available where, as here, the state has promptly informed defendant of the receipt of the additional evidence. This holds true even though new matter is uncovered at an inopportune time for the defense. See, e. g., State v. Walker, 394 So.2d 1181 (La.1981), where a state expert examined shotgun wadding at a noon recess, the state immediately notified the defense of the test results, and we found there was no breach of the continuing duty to disclose under C.Cr.P. art. 729.3; see also State v. Fisher, 380 So.2d 1340 (La.1980), where a state investigator uncovered an additional inculpatory statement, the district attorney immediately informed the defense upon coming into possession of it, and we found that defendant was not entitled to a continuance or to a mistrial.
Additionally, defendant's cited case, State v. Meshell, supra, is factually distinguishable and therefore inapplicable to the instant case. In Meshell, where defendant was afforded a new trial due to the state's violation of its continuing duty to disclose, the prosecutor had been in possession of the defendant's rap sheet since the previous day. The D.A. in that case knew of the defendant's criminal record prior to the start of trial but intentionally withheld that information from defendant until the state had presented its entire case. In Meshell, unlike in the instant case, the state violated its duty under C.Cr.P. art. 729.3 and properly incurred the sanctions of C.Cr.P. art. 729.5. In the case at bar, as previously stated, where no duty has been violated, no sanction is available.
Exclusion of the evidence of defendant's prior convictions in the instant case would not have been proper for the additional reason that to do so, the trial judge would have assisted defendant in his attempted deception of the jury. Given defendant's perjury concerning his lack of criminal convictions, there was no choice on the part of the trial judge but to allow the facts to be truthfully resolved in the minds of the jury. Admission of the evidence where there was no indication of the state's trickery was not only statutorily correct, as pointed out above, but also the only means by which the judge could assure that this trial was fairly conducted with regard to both the defendant and the state.
Incidentally, defendant did not move for a mistrial. Had he done so a more difficult question would be presented, for even assuming the state was innocent of a discovery violation by either neglect or deceit, defendant's having to recant his testimony and admit to the lengthy criminal record did such considerable harm to his defense that it might have been appropriate in an abundance of fairness to order a mistrial on motion of defendant in accord with C.Cr.P. art. 729.5(A). In any event defendant's failure to have requested a mistrial precludes our having to consider that issue. C.Cr.P. art. 841.

Decree
For the reasons expressed above, the defendant's conviction and sentence are affirmed.
AFFIRMED.
REDMANN, J., dissents and assigns reasons.
KLIEBERT, J. pro tem., concurs and assigns reasons.
KLIEBERT, Justice pro tem., concurring.
I concur in the affirmation of the defendant's conviction and sentence and with the majority opinion, except for the last paragraph *218 of the opinion. In my view, the defendant's failure to file for a mistrial has no bearing on his conviction and sentence.
NOTES
[*] Judges William V. Redmann and Thomas J. Kliebert of the Court of Appeal, Fourth Circuit and Judge Cecil C. Cutrer of the Court of Appeal, Third Circuit, participated in this decision as associate justices ad hoc, joined by Associate Justices Pascal F. Calogero, Jr., James L. Dennis, Fred A. Blanche, Jr., and Harry T. Lemmon.
[1] Difficulty in apprehending the defendant stems in part from his large size; he was 6'3" in height and approximately 250 pounds. Three of the four police officers involved in the arrest testified, however, that at no time did they lose sight of the suspect, from the time of his emergence from the victim's house to the time of his apprehension.
[2] C.Cr.P. art. 717 provides:

Upon motion of the defendant, the court shall order the district attorney or the appropriate law enforcement agency to furnish to defendant a copy of any record of his criminal arrests and convictions that is in their possession or custody.
[3] Thereafter the state proved by fingerprints and expert testimony that defendant Joseph Alpine and one Oscar Lee Allen were one and the same person. Also, defendant admitted this fact on recross-examination.
[4] R.S. 15:495 provides:

Evidence of conviction of crime, but not of arrest, indictment or prosecution, is admissible for the purpose of impeaching the credibility of the witness, but before evidence of such former conviction can be adduced from any other source than the witness whose credibility is to be impeached, he must have been questioned on cross-examination as to such conviction, and have failed distinctly to admit the same; and no witness, whether he be defendant or not, can be asked on cross-examination whether or not he has ever been indicted or arrested, and can only be questioned as to conviction, and as provided herein.
[5] As previously mentioned, it was not until after the state's first cross-examination of defendant that the prosecutor received the F.B.I. rap sheet detailing defendant's prior convictions. Furthermore, defendant did not volunteer that he had never been convicted until redirect-examination.
[6] On redirect, defendant recanted his earlier testimony to the effect that he had no prior convictions, explaining that he had initially lied because he knew that persons with criminal records were frequently found guilty on that account alone. Defendant also explained that his prior denial of certain of the convictions was because of his belief that charges filed in a California "municipal" court were not necessarily of a "criminal" nature.
[7] C.Cr.P. art. 729.3 provides:

If, subsequent to compliance with an order issued pursuant to this Chapter and prior to or during trial, a party discovers additional evidence or decides to use additional evidence and such evidence is or may be, subject to discovery or inspection under the order issued, he shall promptly notify the other party and the court of the existence of the additional evidence, so that the court may modify its previous order or allow the other party to make an appropriate motion for additional discovery or inspection.
C.Cr.P. art. 729.5(A) further provides sanctions for failure of a party to comply with discovery articles:
A. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.