630 So.2d 872 (1993)
STATE of Louisiana
v.
Donald WOLFE.
No. 92-KA-1251.
Court of Appeal of Louisiana, Fourth Circuit.
December 30, 1993.
Rehearing Denied January 14, 1994.
*875 Harry F. Connick, Dist. Atty. of Orleans Parish, David L. Arena, Asst. Dist. Atty. of Orleans Parish, New Orleans, for plaintiff/appellee.
Steven Lemoine, New Orleans, for defendant/appellant.
Before PLOTKIN, WALTZER and LANDRIEU, JJ.
WALTZER, Judge.
Defendant was charged with distribution of heroin and pled not guilty. His motion to suppress the evidence was denied and a lunacy hearing was ordered. Because the trial court found the defendant incapable of cooperating with his counsel, he was sent to the Feliciana Forensic Facility. He was later found competent to stand trial and a twelve member jury found the defendant guilty. Defendant was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. He filed a motion for appeal that day. This court reviewed defendant's appeal and found no errors patent in State v. Wolfe, unpub., KA-3396, La.App. 4th Cir., January 15, 1986. The defendant filed an application for post conviction relief which was granted May 12, 1992. State v. Wolfe, unpub., 92-KA-1009, La.App. 4th Cir., May 12, 1992. In the post conviction relief application, this court granted an appeal. The defendant filed a pro se brief with this court.

FACTS:
On July 23, 1982, a confidential informant, identified at trial as Eddie Johnson, phoned DEA Agent Otis Wells and told him that he could introduce Wells to the defendant to purchase heroin. In the afternoon, a team including NOPD Officers Patricia Childress and Forrest Bethay and DEA agents Herbert Warren and Bernard Harry, proceeded to the corner of Baronne Street and Martin Luther King Blvd. in New Orleans. Agent Wells and the informant talked with two people at the corner and learned that the defendant was not there. After ten minutes, the defendant arrived. Wells and the informant indicated they wanted to purchase three bags of heroin. The defendant left, came back, obtained $72.00 from Wells, left again, came back and gave three bags of heroin to Agent Wells. Wells and the informant then left the scene and drove to a nearby Burger King where they met with the other officers who had been acting as the surveillance team. The heroin was delivered to the other agents. Subsequently, the evidence was sent to the DEA laboratory in Dallas, Texas. Margaret Stevenson, a chemist at the DEA lab, testified at trial that the powder sent for analysis proved to be 22% heroin.
The defense put on one witness, Dale Noel, the defendant's sister, who testified that she and the defendant were drug users. She said her apartment near Baronne and Martin Luther King was used as a "shooting gallery", a place where drug users met to inject heroin. She said that neither she nor the defendant distributed drugs, but that her neighbor, Wilfred McGee, distributed drugs and that she and her brother would sometimes bring him money from other users, pick up drugs, and then take the drugs to the purchaser.

COUNSEL'S MOTION TO WITHDRAW:
Counsel complied with the procedures outlined by Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), as interpreted by this Court in State v. Benjamin, 573 So.2d 528 (La.App. 4th Cir.1990). Counsel's detailed review of the procedural history of the case and the facts of the case indicate a thorough review of the record. Counsel has moved to withdraw because he believes, after a conscientious review of the record, that there are no non-frivolous issues to be raised on appeal. Counsel has reviewed all available transcripts and has found no trial court rulings which arguably support the appeal. A copy of the brief was forwarded to the appellant, and this Court informed *876 the defendant that he had the right to file a brief on his own behalf. Accordingly, Counsel's motion to withdraw is granted.

ASSIGNMENT OF ERROR ONE:
Defendant argues he was prejudiced because the State refused to reveal the identity of the confidential informant prior to trial.
This assignment was the sole assignment of error in the original appeal. In the brief, counsel specifically abandoned this assignment as follows:
The assignment of error originally filed with the trial court suggested that reversible error was to be found in the trial court's refusal to allow questions as to whether the confidential informer was paid to assist in making purchases, or whether the confidential informer had been arrested before and was thus in some way indebted to the police. However, as the confidential informer's name was known to the defendant, as no one argued or suggested prior contact between the informer and the defendant (thus raising a possibility of entrapment), and in light of the curious defense presented (curious if a not guilty verdict was being sought, not curious if the defense sought only a verdict of guilty of simple possession), this assignment has not been briefed. Defense counsel can think of no argument which might be made, on the record, of how the answer would have changed the jury's verdict.
The defendant later filed an application for post conviction relief raising the same issue. State v. Wolfe, unpub. (89-K-2394, La.App. 4th Cir. March 13, 1990). This court denied writs on the showing made. Judicial efficiency demands that this court give great deference to its own prior decisions, unless it is apparent, in light of the record that the determination was patently erroneous and produced an unjust result. State v. Humphrey, 412 So.2d 507 (La.1982) (on rehearing.)
Here, the result is not patently erroneous. In a Motion for Bill of Particulars and Discovery and Inspection, defendant requested "the names, titles, and last known residence and business addresses of the persons who obtained [evidence against the defendant] and all persons present at the time such evidence was taken." The State responded "Audis Wells and Federal Cooperating Individual 5GH-82-0013." The minute entry states: "Defense counsel was satisfied with the state's answers to the Bill of Particulars." No request for the identity of the informant was ever made prior to trial, there was therefore no judicial determination that the identity of the informant should be withheld prior to trial, and thus because there was no request there is no ruling for this court to review. When the defense asked Detective Childress the name of the informant and the State objected, the trial court overruled the objection and ordered the detective to answer.
We note that even if the defendant had requested the informant's identity prior to trial, the defendant would not have been entitled to the information. The identity of a confidential informant who supplies information concerning a crime to law enforcement officers is privileged, and such identity should only be divulged under exceptional circumstances. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); State v. Oliver, 430 So.2d 650 (La. 1983), cert. den., Oliver v. Louisiana, 464 U.S. 997, 104 S.Ct. 495, 78 L.Ed.2d 688 (1983); State v. Clouatre, 482 So.2d 106 (La. App. 4th Cir.1986). The defendant has the burden of showing exceptional circumstances, and much discretion is vested in the trial court's determination of whether the circumstances warrant disclosure. Oliver, Clouatre, supra.
Earlier Louisiana cases mandated disclosure of an informant's identity when it was shown that the informant participated in the crime. In Oliver, the Court noted:
only when the evidence shows that the informant, in cooperation with the police, participated in the crime, should the identity be disclosed to the defendant. In such cases, the informant does more than furnish a tip that enables the police to make an arrest or search. While working with the police, he takes part in the illegal transaction itself. (At 652).
*877 Later cases from this court have adopted the three-prong test of criteria employed by the federal Fifth Circuit Court of Appeals for determining whether the identity must be disclosed:
(1) the defendant's exceptional circumstances which require disclosure;
(2) the informant's participation in the crime; and
(3) the state's interest in the nondisclosure of the identity.
See: State v. Clark, 553 So.2d 1020 (La. App. 4th Cir.1989); United States v. De Los Santos, 810 F.2d 1326 (5th Cir.1987), cert. den., De Los Santos v. United States, 484 U.S. 978, 108 S.Ct. 490, 98 L.Ed.2d 488 (1987); United States v. Ayala, 643 F.2d 244 (5th Cir.1981). Although this court in Clark listed the first two prongs separately, it also noted:
These exceptional circumstances are not, however, disjunctive and, in essence, become one exceptional circumstance with treatment given to two interrelated factors. That is, the extent of participation by the confidential informant in the crime must be against the effect it has, if at all, on the ability of the defendant to properly defend his case. Clark at 1021.
In State v. Weems, 358 So.2d 285 (La. 1978), the confidential informant set up the drug deal in his apartment and actually gave money to the defendant for the drug sale prior to the undercover officer's arrival at the apartment. By the time the defendant returned to the apartment with the drugs, the undercover officer was there, and the defendant gave the drugs to the officer. The court refused to order the disclosure of the confidential informant's identity, noting that the defense had already discovered his identity due to the state's disclosure of the apartment where the sale occurred and that the court had allowed a full examination of the confidential informant's background. The court also stated, however, that the confidential informant's actions did not constitute participation in the distribution of the drugs, and that the mere allegation of entrapment was not sufficient to mandate the disclosure of the confidential informant's identity.
In Clouatre, supra the informant introduced the defendant to the undercover officer and witnessed the drug transaction between the two. This court found that the informant's actions did not constitute participation in the drug sale, especially in light of the fact that the officer and the defendant were already acquainted.
In State v. Fontenot, 524 So.2d 867 (La. App. 3rd Cir.1988), two undercover officers entered a lounge with the confidential informant. The defendant came to the table where the trio sat and talked briefly with them, and then he walked to the bar. The confidential informant went to the bar, spoke privately with the defendant, and then returned to the table and told the officers that the defendant would sell them a bag of marijuana once "his man" arrived. Approximately one-half hour later, the defendant came back to the table and told one of the officers to step outside because it was "time to deal". The confidential informant remained inside while the officer went outside with the defendant and met a third person who actually sold the drugs to the officer.
In reversing the defendant's conviction as a principal to the drug sale, the Third Circuit found that the trial court erred by refusing to order the disclosure of the confidential informant's identity. The court noted that the defendant had been convicted as a principal based upon his actions which primarily occurred only in the confidential informant's presence. While the contents of the conversation between the defendant and the confidential informant were not revealed to the jury, the evidence presented at trial gave the impression that the defendant agreed to procure a third party to sell the drugs. The court stated: "Take away evidence of the participation of the confidential informant in the events, and the evidence would have been wholly insufficient to have established that defendant was a principal to the crime of distribution of marijuana." Id. at 869. Finding that the defendant had the right to confront the sole witness against him with respect to this supposed conversation which set up the deal, the court reversed the defendant's conviction.
*878 Here, the confidential informant's actions were much less than those in either Weems or Fontenot and were much closer to those in Clouatre. In addition, although the confidential informant made the initial contact with the defendant, and introduced the officers to the defendant, unlike in Fontenot, here all actions of the confidential informant with respect to the sales were made in the presence of the undercover officer. Indeed, in Clark, where this court ordered the discovery of the confidential informant's identity, the confidential informant left the undercover officer and privately met with the defendant, actually setting up the deal prior to returning to the officer with the defendant in tow, who then sold the drugs to the officer. That element of privacy between the confidential informant and the defendant, which was so crucial in Clark and Fontenot, is not present here. Given this difference and the cases discussed above, the trial court did not err in refusing to order the state to disclose the identity of the confidential informant in this case. Accordingly, this assignment is without merit.

PRO SE ASSIGNMENT TWO:
The defendant argues the trial court erred in admitting inadmissible hearsay, specifically, statements made by the non-testifying confidential informant. No contemporaneous objection was made at trial. An irregularity or error cannot be complained of after verdict unless it was objected to at the time of the occurrence. C.Cr.P. art. 841. Accordingly, this assignment is without merit.

PRO SE ASSIGNMENT THREE:
The defendant argues he was denied his right to effective cross-examination. The defendant complains of the sustaining of three State objections to defense questions. Two of the questions related to whether the informant had an interest in cooperating with the narcotics investigation. The other question pertained to a search warrant of the residence of McGee.
The defendant has already made these arguments to this court on an application for post-conviction relief. This court denied writs on the showing made. State v. Wolfe, unpub., 89-K-2394, La.App. 4th Cir., March 13, 1990. Since the court has already ruled on the merits of this argument this assignment of error is without merit.
The first of the former questions was asked of Childress, the second, Wells:
Q to Childress: "You all were paying [the informant] to [assist the police in purchasing drugs]?"
The State objected on the ground of relevancy and the trial court sustained.
Q to Wells: "Now the informant, Eddie Johnson, what was he to receive, what was his benefit from conducting all of this help?" The trial court sustained the defense's objection.
The drug transaction took place between Agent Wells and the defendant, not the informant and the defendant. Thus, the bias of the informant does not appear particularly relevant to the case. However, even if evidence of the informant's interest or bias was relevant, the defendant asserted the defense that he was a drug user and not a drug distributor. He did not assert entrapment. Thus, the defendant could not have been prejudiced by the refusal to admit evidence concerning the informant's bias.
[11] The last question was to Bethay:
Q: "And you don't remember the name Wilfred McGee?
A: "No, I don't."
Q: "Were you part of the team that served the search warrant on one of these apartments a week later?"
The State objected and the trial court sustained. Evidence that the agent participated in a search involving a separate crime is not relevant to the determination of whether the defendant committed this crime. The defendant argues that by sustaining the objection, the trial court prevented him from asserting his defense that he was a drug user and not a drug distributor. However, the evidence that the defendant put forth in asserting his defense was the testimony of his sister that she and the defendant would collect money from drug users, go to McGee's apartment and obtain the drugs, then take the drugs to *879 the user. This evidence does not in fact assert a defense, it is in fact inculpatory evidence that the defendant was a principal in a drug distribution scheme. Accordingly, this assignment is without merit.

PRO SE ASSIGNMENT FOUR:
The defendant argues the State failed to give the defense Brady material. The defendant raised this argument in his application for post conviction relief. State v. Wolfe, unpub., 90-K-1990, La.App. 4th Cir. November 12, 1990. However, in the writ, the argument was based on the failure to provide documents other than those he now argues he was denied.[1]
The due process clause of the Fourteenth Amendment to the United States Constitution requires the disclosure upon request of evidence which is favorable to the accused when the evidence is material to guilt or punishment. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This rule has been expanded to include evidence which impeaches the testimony of a witness where the reliability or credibility of the witness may be determinative of guilt or innocence. Giglio v. U.S., 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). The Brady rule is based on the requirements of due process. "[T]he prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial, that is, evidence favorable to the defendant which is material to guilt or punishment." State v. Rosiere, 488 So.2d 965, 970 (La.1986). The test for determining materiality was established in United State v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). "The evidence is material only if there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome." Bagley, 473 U.S. at 682, 105 S.Ct. at 3383. The test for determining materiality is the same whether or not the defense makes a pretrial request for exculpatory evidence. Id.
The defendant complains that the date of birth, date of arrest, and address listed on a DEA report pertain to his brother. The report is entitled "Defendant Disposition Report" and was written on November 21, 1984, after the defendant had already been convicted and sentenced. Thus, obviously, the report was not available prior to trial. The defendant also argues he should have been given a DEA "Report of Investigation" which contained evidence of the arrest of the defendant and his brother. The information pertaining to the brother has been blacked out. The report contains a statement that "On December 20, 1982, bail was set in the amount of $10,000.00 on Wolfe which was furnished." The defendant states he never furnished bail. The docket master and minute entries support the defendant's assertion and the report is apparently in error. However, evidence that the defendant posted bail is not evidence favorable to him and is not material to his guilt. Therefore, the defendant does not prevail on a Brady claim as to this report.
The defendant also complains that the State should have given him a copy of the police report which states that the defendant was charged with the distribution of two bags of heroin on July 23, 1982 whereas the State accused him of distributing three bags of heroin on July 30, 1982. This report does appear to contain Brady material because *880 evidence that the buy occurred on a different day and was for a different amount than that testified to by the witnesses would have impeached their credibility. However, the evidence does not appear material since there is not a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. Here, Wells testified he purchased heroin from the defendant. In light of his testimony that the buy did occur and that the defendant was the seller, there is not a sufficient probability that the outcome of the case was undermined. Accordingly, this assignment is without merit.

PRO SE ASSIGNMENT FIVE:
The defendant argues the trial court erred in finding him competent to proceed to trial and to assist counsel. On April 14, 1983, pursuant to a lunacy hearing the defendant was found incompetent to proceed to trial on the basis of reports by Drs. Kenneth Ritter and Ignacio Medina. Defendant was transported to the Feliciana Forensic Facility for care, custody, and treatment. On December 19, 1983 Dr. Aris Cox in a follow up noted that defendant "was evasive and did not appear to be psychotic" such that Dr. Cox ordered further testing. On January 24, 1984, Dr. Charles Vosbein issued a report based upon the further testing ordered by Dr. Cox. Dr. Vosbein stated in part:
Background information provided by Mr. Wolfe to other relevant staff members appear to yield the following areas of incongruence with the statements (made) to this examiner: How his jaw was injured; His educational record; and the current charges.
REPORT OF PERTINENT FINDINGS SINCE ADMISSION:
Upon review of information delineated in Mr. Wolfe's progress notes, consultation with staff members, and direct observations during staffings, the following behaviors are important to consider: During the first week Mr. Wolfe was at Feliciana Forensic Facility, he seemed generally cooperative. He appears to have become rather non-compliant and at times aggressive, i.e., per staff request to attend staffing, to have his blood pressure checked, participate in psychological testing, and have his room checked for the possibility of contraband (medicineArtane). While on the Top of Station II, Mr. Wolfe was involved in an escape in which a nurse and two security officers were locked in a cell and the ward keys were used to exit through the front ward door (see progress notes of 1-1-84 8:50 p.m.). Mr. Wolfe was later captured and eventually placed on(sic) confinement on the Top of Station II. Later Mr. Wolfe was removed from the Top of Station II and placed on the Top of Station I where he remains in confinement.
While at times Mr. Wolfe has vaguely complained of psychotic symptomatology, namely non-specific auditory hallucinations, professional staff members observing Mr. Wolfe have not seen overt psychotic behavior or behavior mildly indicative of psychosis.
MEDICATION:
CurrentNone: Previous as reported by patientThorazine and Artane.
BEHAVIORAL OBSERVATIONS AND IMPRESSIONS DURING EVALUATION:
It should be noted that Mr. Wolfe refused to attend an examination session where, per psychiatric orders, he had to wear wristlets. Therefore, Mr. Wolfe's psychological evaluation was performed on the ward. Previously he did consent to walking over to the psycheometrist's office for a portion of the testing (without wristlets). During this initial test administration contact Mr. Wolfe appeared calm and reserved. As the evaluation proceeded, it became increasingly evident that Mr. Wolfe was guarded and generally was not open with his responses to test stimuli and casual questions asked by the examiner. Constriction of response style and general weariness of examiner probes appeared to dominate the behaviors exhibited by Mr. Wolfe. While Mr. Wolfe's verbal expression was limited, usually responding to questions with minimal embellishment, this current analysis indicated no unusual thought processes. Further, extreme emotional liability was not evidenced. *881 Generally, Mr. Wolfe demonstrated adequate affective and cognitive control and presented no behaviors reminiscent of even mild psychotic symptomatology.
It should be documented that when requested to complete the psychological evaluation, i.e. attend further testing at the psycheometrist's office, he refused, citing that he was not going to wear the wristlets off the ward. This examiner then went to the ward to complete the testing, at which time Mr. Wolfe declined again to complete the requested tasks.

ANALYSIS OF ASSESSMENT:
It is important to note that Mr. Wolfe's non-compliance with requests to complete standardized tests limited the quantity of evaluative data. However, the formal test data, when combined with the behaviors directly observed by the examiner in Mr. Wolfe's staffings, on the wards (Stations I and II), and during the testing sessions, and review of behavioral observations written by professional and non-professional staff members, seem to yield as complete a profile as can be reasonably obtained at present.
The current test data, while limited in quantity, indicated that Mr. Wolfe does have the ability to adequately perceive and respond to his environment. That is to say, Mr. Wolfe does not currently exhibit a significant level of cognitive and/or affective impairment. His decision making ability appears to be reality based.
The guarded and/or cautious response style presented by Mr. Wolfe appears to be directly related to legal charges he faces and does not correspond to any relevant level of paranoia. This response style appears to be one segement(sic) in Mr. Wolfe's attempts to malinger mental illness, by expressing limited data for observation.
Screening of intellectual functioning indicated ability with in Borderline range of functioning, with the likelihood of functioning in the Low-Average range a possibility, minus malingering attempts. Organicity screening yielded on [no] significant findings.

SUMMARY AND OPINION OF LEGAL ISSUES:
In consideration of all relevant information, standardized tests, direct behavioral observations, general background information, and written observations by professional and non-professional staff member[s], significant symptomatology does not appear to be currently in evident that would warrent(sic) a diagnosis which would preclude or adversely alter Mr. Wolfe's competency to stand trial. Although, on occasion, choosing to feign psychosis by means of reporting vague and non-descript auditory hallucinations to staff, Mr. Wolfe does not exhibit any psychotic symptomatology at present. His thought processes appear to be relevant, logical, and goal-directed. Mr. Wolfe's affect, for the most part, is balanced.
Currently existing data indicates that Mr. Wolfe is malingering mental illness. By history, Mr. Wolfe has a mixed substance abuse disorder.
On April 17, 1984, Drs. Ritter and Medina again inquired into defendant's mental condition, pursuant to an order issued by the trial court. In his report to the court, Dr. Ritter stated:
Pursuant to your order of April 17, 1984, we again inquired into the mental state of Donald Wolfe.
In reviewing this case we note that in the past there were prior Sanity Commissions in St. Charles Parish appointed after Wolfe was arrested on other chargesone in 1976 and the other in 1981. These Commissions reported that Wolfe was both Incompetent and Insane because of moderate mental retardation.
The present Sanity Commissionthe undersigned reported the same findings to your Court on April 14, 1983 and Wolfe was sent to Feliciana Forensic Facility, where more exhaustive examinations disclosed that Wolfe had malingered, that he was feigning retardation, and that he was at least of borderline intelligence and is an Antisocial personality.
Since the only basis the Commission had for reporting Incompetence and Insanity was moderate mental retardation, we must *882 alter our original report to your Court and now report that Donald Wolfe is competent to proceed to trial and was sane at the time of the alleged crime.
Accordingly, the trial court found the defendant competent.
Given these factors, it does not appear the trial court abused its discretion in finding the defendant competent to proceed to trial and competent to assist with his defense. State v. Jackson, 600 So.2d 739 (La.App. 4th Cir. 1992.) Accordingly, this assignment is without merit.

PRO SE ASSIGNMENT SIX:
The defendant argues his counsel was ineffective because counsel did not assert a defense of not guilty by reason of insanity. We note that defendant has already made this argument once before at which time the argument was found to be without merit.[2]
Ordinarily, the issue of ineffective assistance of counsel is more properly raised in an application for post-conviction relief filed initially in the trial court where a full evidentiary hearing can be held. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Petta, 496 So.2d 390 (La.App. 4th Cir.1986), writ den., 533 So.2d 10 (La.1988.) However, where the record on appeal discloses sufficient evidence upon which to make a determination of counsel's effectiveness, a decision on the issue on appeal may be made in the interest of judicial economy. State v. Seiss, 428 So.2d 444 (La.1983); State v. Haywood, 516 So.2d 196 (La.App. 4th Cir.1987) writ den., 578 So.2d 922 (La.1991).
In the instant case, defendant complains that his counsel did not raise a plea of not guilty by reason on insanity. In light of the above discussed medical reports, it is to counsel's credit that he did not raise such a plea which would have been clearly fraudulent in light of Mr. Wolfe's attempts to fake mental illness. Counsel was not deficient in not raising the defense, but rather he steered the proper course. This specification or assignment of error is without merit.
At the end of the defendant's argument on this assignment, he lists other instances where counsel was allegedly deficient. This list is a summation of arguments raised either in the other assignments of error discussed herein or in applications for post conviction relief discussed herein. The list is totally unsupported by the record and this assignment is without merit.
PRO SE ASSIGNMENT SEVEN:
Defendant attacks a constitutionally deficient jury instruction on reasonable doubt.
The jury instruction given by the trial court is the same jury charge which the U.S. Supreme Court found constitutionally defective in Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). The trial court in the instant case stated:
If you entertain a reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your duty to give him the benefit of that doubt and return a verdict of not guilty. Even where the evidence demonstrates a probability of guilt, yet, if it does not establish such guilt beyond a reasonable doubt, you must acquit the accused.
However, this doubt must be a reasonable one; that is, one that is founded upon a real, tangible, substantial basis, and not upon mere caprice, fancy or conjecture. It must be such a doubt as would give rise to a grave uncertainty raised in your minds by reason of the unsatisfactory character of the evidence or the lack thereof. It is an actual or substantial doubt. It is a *883 doubt that a reasonable man would seriously entertain. What is required is not an absolute or mathematical certainty but a moral certainty.
It should be noted that the trial court gave the above quoted jury instruction on November 14, 1984, six years before Cage declared the charge to be unconstitutional and that counsel did not object to the charge, which had not yet been found unconstitutional. Defendant argues both that the instruction given violated his due process rights and that his lawyer was incompetent for failing to object to this jury instruction.
In State v. Dobson, 578 So.2d 533 (La.App. 4th Cir.1991), writ den., 588 So.2d 1110 (La. 1991), a three judge panel of this court with Schott, J. as the organ held that a contemporaneous objection must have been entered when the jury instruction was given in order to preserve any claim on appeal. This court in State v. Berniard, 625 So.2d 217 (La.App. 4th Cir.1993) by an 8 to 4 vote of the court en banc originally decided to overrule Dobson on the basis of the U.S. Supreme Court decision in Sullivan v. Louisiana, ___ U.S. ___, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). In Sullivan, the Supreme Court determined that an erroneous Cage instruction is reversible error as a "structural defect in the constitution of the trial mechanism" and is not subject to the harmless error rule, i.e. that a Cage instruction is always reversible error. On rehearing, however, by a vote of 6 to 6, 6 members of the court en banc voted not to overrule Dobson on unstated grounds. State v. Berniard, 625 So.2d 217 (La.App. 4th Cir. 1993). All three members of the instant appellate panel voted to overrule Dobson on the grounds that a holding that a contemporaneous objection must have been entered when the jury instruction was given in order to preserve any claim on appeal is in effect a finding that failure to object to a constitutionally deficient charge when given is harmless error, thus Dobson is an application of the harmless error rule prohibited by the U.S. Supreme Court in Sullivan. While these three writers would follow the ruling of the U.S. Supreme Court in Sullivan, this panel is bound by the "law of the circuit" rule. Since there is no majority in a 6-6 split decision, there is no clear statement by this court that Dobson has been overruled. Accordingly, we hold that because there was no contemporaneous objection, this specification is presently meritless. Should the Louisiana Supreme Court overrule this court's 6-6 decision on Dobson on rehearing, then defendant's argument should be preserved for appeal to the Louisiana Supreme Court.
Turning to the second part of this specification of error, defendant argues that his lawyer was incompetent for failing to object to the Cage instruction some 6 years before it was held to be unconstitutional. We disagree. Because at the time of trial, this jury instruction had been upheld by the Louisiana Supreme Court, any objection made by counsel would have been a vain and useless act and counsel was not "deficient" for failing to object. We note that both the U.S. Fifth Circuit Court of Appeals and the Louisiana Supreme Court have found that the U.S. Supreme Court's ruling in Cage set forth a "new rule" of law which is not to be applied retroactively to cases where the appeal is final. See Skelton v. Whitley, 950 F.2d 1037 (5th Cir.1992), cert. den., Skelton v. Smith, ___ U.S. ___, 113 S.Ct. 102, 121 L.Ed.2d 61 (1992); State, ex rel. Taylor v. Whitley, 606 So.2d 1292 (La.1992), cert. den., Taylor v. Whitley, ___ U.S. ___, 113 S.Ct. 2935, 124 L.Ed.2d 684 (1993). Indeed, in Taylor the Court stated that it had criticized but upheld jury instructions similar to that struck down Cage in cases such as State v. Taylor, 410 So.2d 224 (La.1982); State v. Messiah, 538 So.2d 175 (La.1988), cert. den., Messiah v. Louisiana, 493 U.S. 1063, 110 S.Ct. 880, 107 L.Ed.2d 963 (1990), as well as in its original opinion in State v. Cage, 554 So.2d 39 (La.1989). Because the jury instruction given in this case was very similar to those upheld by the Louisiana Supreme Court in the past, counsel could not be deemed to have acted deficiently for failing to object. Even if counsel had objected and the error had been raised on appeal in his first appeal, his conviction would have been affirmed as per Cage and Messiah.[3]
*884 This court cannot impose upon counsel the obligation to read crystal balls or otherwise predict the future actions of appellate courts. This kind of hindsight cannot be used as the basis of an incompetent counsel allegation. Counsel has a right to rely upon the state of the law enunciated at the time of his professional decision to object or not to object. Thus counsel was not deficient in relying upon the state of the law as it existed at the time of trial in deciding whether or not to object to this jury charge. Accordingly, this assignment of error is without merit.

PRO SE ASSIGNMENT EIGHT:
The defendant argues the evidence was insufficient to support the conviction.
In assessing the sufficiency of evidence to support a conviction in a direct evidence case, the reviewing court must determine whether, viewing the facts in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Fuller, 414 So.2d 306 (La.1982).
To support a conviction of R.S. 40:966(A), the State must prove that the defendant (1) distributed (2) a controlled dangerous substance classified in Schedule I. In this case, Otis Wells of the Drug Enforcement Agency testified that the defendant sold him three bags. The contents of the bags were tested and discovered to contain 22% heroin, a Schedule I controlled dangerous substance. Distribution of heroin is a crime requiring only general criminal intent. That intent is established by mere proof of voluntary distribution. State v. Williams, 352 So.2d 1295 (La.1977). Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty of distribution of heroin beyond a reasonable doubt. State v. Williams, supra. This assignment is without merit.
For the reasons discussed, defense counsel's motion to withdraw is granted and defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The drug buy occurred July 23, 1982. The defendant was arrested on an unrelated charge in September 1982. He was indicted for the distribution charge in December 1982. He argued he should have been provided a copy of his FBI rap sheet which showed an arrest or charge for auto theft on July 16, 1982, a week before the instant offense, a copy of the arrest register which verified his actual arrest on July 16, 1982, and a copy of the District Attorney's screening form which showed that charges were refused on July 26, 1982, three days after the instant offense. This court found: "Although the district attorney's screening form indicated that the theft charges were refused on July 26, 1982, the record shows that Donald Wolfe posted the $3,000.00 bond on July 17, 1982 and was released from jail. We therefore find no merit in relator's argument that he was in jail at the time of the distribution of heroin which occurred several days later on July 23, 1982."
[2] The defendant has already argued ineffective assistance of counsel to this court in 89-K-2394. In that application for postconviction relief, the defendant argued counsel, was ineffective in 1) not testing the validity of the indictment in a motion to quash, 2) not questioning the preindictment identification of the defendant, 3) not filing a motion for preliminary examination, 4) not pleading not guilty by reason of insanity, 5) not objecting to the State's allegedly insufficient answers to defendant's discovery motions, 6) not moving for an independent medical examination, 7) not making various objections at the hearing to determine the capacity to proceed, and 8) not "considering all options, the law and facts of the particulars of this individual case, researching and investigating same to its legal conclusion in preparation for trial." This court denied writs stating: "After a thorough review of the record, on the showing made by the relator, we find that the trial court did not err in denying the relator's application for post conviction relief."
[3] This court's opinion in his original appeal, KA-3396, was rendered on January 15, 1986. Cage was decided by the U.S. Supreme Court on November 13, 1990.