662 So.2d 77 (1995)
STATE of Louisiana
v.
Vataggo D. LEWIS.
No. 95-KA-0412.
Court of Appeal of Louisiana, Fourth Circuit.
September 28, 1995.
Harry F. Connick, District Attorney, Charmagne Padua, Assistant District Attorney, New Orleans, for State/Appellee.
Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for Defendant/Appellant.
Before BYRNES, CIACCIO and MURRAY, JJ.
CIACCIO, Judge.
Defendant, Vataggo D. Lewis, was charged by bill of information with attempted armed robbery, a violation of La.R.S. 14:(27)64. At *78 his arraignment, he pleaded not guilty. On receiving a copy of the police report, defense counsel waived a preliminary hearing and withdrew all discovery motions. After trial, a twelve-member jury found him guilty as charged. The trial court sentenced defendant to serve thirty years at hard labor without benefit of parole, probation, or suspension of sentence as a second offender under R.S. 15:529.1. Defendant now appeals.
At trial Vincent P. Poret, the victim, testified that he was driving his cab on the evening of July 13, 1994, when he was called to pick someone up at 1429 South Rampart Street. On arriving at that address, he found two menone sitting on steps and the other standing beside himwho wanted to go to Second and Laurel Streets. One man, the appellant, got into the front seat, and the other sat in the back. Mr. Poret said the appellant kept putting his hand under his shirt which was alarming to the driver, who suspected the man was reaching for a gun. Neither passenger said anything during the ride until Mr. Poret was turning into Third Street; then the man in the back seat put a gun in Poret's face and said "Give it up, all of it." Mr. Poret reached up and held the barrel of the gun with his right hand; meanwhile with his left hand he took his own gun and shot into the back seat. (Poret said he carries a gun on his seat when he is working). At that moment the appellant raised his hands toward Poret, who assuming he had a gun, shot him several times. The taxi went out of control during the gun fire coming to rest up on a curb and against a utility pole. The two passengers opened their doors and fled; onethe appellant going toward the river, and the other going in the opposite direction. Moments later the police arrived, and shortly after that Poret was told that a wounded man had been found a few blocks away. When Poret first saw the man, he identified him as the man in the back seat, but then he realized he was mistaken, he testified, and he identified the wounded man as the man from the front seat to the officers on the crime scene. He said he was confused because the man in the front seat had on a light-colored shirt and the man in the back seat had on a multi-colored shirt while they were in the taxi; yet when he saw the man from the front seat after the police found him, he had on a multi-colored shirt. That manthe appellantalso had in his possession a light colored shirt. The police report taken by Officer Ballex recorded Mr. Poret's first impression onlythat the appellant was the man in the back seat of the taxi.
Dr. Washington Brian of the surgical trauma team at Charity Hospital testified that he was working on July 14, 1994, when the appellant was treated for multiple gunshot wounds. Dr. Brian found at least three entry wounds producing injuries on his left shoulder blade, on his left flank, on his left axilla, and on his interior shoulder.
NOPD Officer Steven Lentz testified that he answered a call on an armed robbery about 10 p.m. to find Vincent Poret standing beside his taxicab; shortly thereafter the officer received a call that a wounded man had been found on Chippewa Street, just one block south of the accident site. Officer Lentz said that when the appellant was brought to the scene, he had on tan jeans and a multi-colored shirt. Lentz also stated that the man appeared to have two gunshot wounds to the left side of his upper body.
NOPD Officer Gene Ballex testified that he wrote the police report from information given him from police officers and the victim, Vincent Poret. Ballex explained that the shifts for the officers were changing and that because he was just coming on duty and the other officers were leaving, he was given information to write the police report even though he had not been there during the investigation. Officer Ballex said that he was told by Officer Lentz that Mr. Poret had named the appellant as the man in the back seat of the taxi. Ballex admitted that he could have misunderstood Officer Lentz or Lentz could have given him the wrong information. Officer Lentz was recalled to testify in rebuttal; he said that Mr. Poret had told him that the man captured in the armed robbery had been sitting in the front of the taxi. Lentz said that when he read the police report prior to his earlier testimony at trial, he realized the mistake in the report and informed the assistant district attorney. Lentz estimated that he told the assistant *79 district attorney about thirty minutes prior to trial.
A review of the record for errors patent reveals there are none.
The appellant first argues that the trial court erred in denying the request for a mistrial when it was found that the defense had been misled in discovery.
The defense admits that by waiving all pretrial evidentiary hearings it precluded discovery of the mistake in the police report prior to trial, and it also concedes that there was no wrongdoing on the part of the State in withholding information. In its brief the defense cites no statutory authority for its position that a thirty minute delay in receiving information concerning a mistake in the police report merits a mistrial.
Further, mistrial is a drastic remedy which should be declared when unnecessary prejudice results to the defendant. State v. Smith, 430 So.2d 31 (La.1983). The trial court has discretion to determine whether a fair trial is impossible, or whether an admonition is adequate to assure a fair trial when the alleged misconduct does not fit into the provisions for mandatory mistrial, and the ruling will not be disturbed on review absent an abuse of discretion. State v. Narcisse, 426 So.2d 118 (La.1983), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983).
Although the defense argues it did not know where the appellant was seated in the taxi until Vincent Poret testified, there is evidence in the opening statements that the defense was aware of a discrepancy in the police report. In her opening statement, the assistant district attorney summarized Vincent Poret's testimony as follows:
Now Mr. Poret will tell you....
* * * * * *
The first individual who got in the front passenger's seat was that man seated before you today, Vataggo Lewis. There was a second perpetrator. He got in the rear seat directly behind Mr. Poret.
* * * * * *
[T]he man in the backseat put a revolver against his face, demanding money.....
He's [Poret's] going to tell you that he reached over his shoulder and shot at that individual [rear passenger]. That the man in the passenger's seat, the defendant before you, he sawand again, this is happening very quickly, he saw this man going for what he believed was a gun underneath his shirt.
In the defense's opening statement, the attorney responded to the facts he had heard:
And you're going to see what occurred is this man,
Vataggo, gets in the vehicle; Poret freaks out, Poret overreacts, and he starts shooting. And he shoots a man who is in the vehicle, maybe talking to him but certainly not armed with a gun.
* * * * * *
Was he shot? Yes, he was shot by the man. Was he in the cab? Yes, he was in the cab. Where was he in the cab? I got a feeling we're going to be uncertain about that.
Here the assistant district attorney states the position of the appellant as the front seat twice and indicates that an unknown assailant was in the back seat. The defense attorney recognizes the discrepancy immediately and remarks on it.
The appellant cites two cases in his brief in support of a mistrial. However, neither supports the granting of a mistrial in this case. In State v. Lewis, 328 So.2d 75 (La.1976), cert. denied 429 U.S. 833, 97 S.Ct. 98, 50 L.Ed.2d 98 (1976), a drug distribution case, the defense requested any oral communication by the defendant to any law enforcement agent. The State responded that it had none, but on the day of trial and out of the presence of the jury, the State announced it had just learned the defendant made an inculpatory statement to an officer in another parish. The trial court permitted the statement into evidence, and the Supreme Court found no error because there was no misrepresentation on the part of the State and because the statement did not "constitute the injection of any issue of substantial impact upon the preparation for trial or upon trial *80 tactics." State v. Lewis, 328 So.2d at 79. In the instant case the finding that the police report was erroneous disadvantaged the prosecution and the defense equally in terms of preparation for trial and trial tactics; also there was no suggestion of misrepresentation.
The defense also cites State v. Alpine, 404 So.2d 213 (La.1981), where the State knew of no criminal history for the defendant during discovery; however, after the defendant testified at trial, the State discovered he had an extensive criminal history in three states. The defense argued the convictions should not be used for impeachment, but the trial court allowed the defendant to take the stand again in order to admit the convictions. The Supreme Court affirmed the conviction but noted that there had not been a motion for a mistrial. Alpine can be distinguished from the instant case in that there the appellant was certainly harmed by the information the State received at the last moment. In the instant case, the new information revealed the appellant was not the gunman; therefore, the information exonerated him of some degree of guilt.
This Court has recently considered situations where the State had supplemental evidence that was not given to the defense prior to trial.[1]State v. Thomas, 92-1428 (La. App. 4th Cir. 5/26/94), 637 So.2d 1272, writ denied 94-1725 (La. 11/18/94), 646 So.2d 376 (La.1994), cert. denied ___ U.S. ___, 115 S.Ct. 1437, 131 L.Ed.2d 317 (1995); State v. Wolfe, 630 So.2d 872 (La.App. 4th Cir.1993), writ denied 94-0448 (La. 10/28/94), 644 So.2d 648. In each case, the discussion hinged on whether the information involved was exculpatory evidence, i.e. material evidence favorable to the defense which supports innocence. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); State v. Banks, 446 So.2d 497, 500 (La.App. 4th Cir.1984).
Here the defense does not argue that the State withheld Brady material, and since the defense knew during opening statement that the position of the appellant in the taxi was at issue, the appellant has not suffered any harm. Furthermore, we find the error to be harmless because Vincent Poret admitted his inconsistent statements and tried to explain why he made them. Officer Lentz remembered Poret's stating that the wounded man had been in the front seat; Officer Ballex was told that the wounded man had been in the back seat, but he stated that he might have misunderstood. Counsel forcefully brought the inconsistency to the jury's attention, and the jury had an opportunity to consider the impeachment value of it, and to weigh Poret's and the officers' credibility in light of it. Considering the mistake in the police report in the context of the entire record, we do not find that there is a reasonable probability that the outcome of the trial would have been different had a correct version of the police report been disclosed to the defense thirty minutes prior to trial.
*81 There is no merit in this assignment.
The appellant next argues that there was insufficient evidence to support his conviction as a principal in an attempted armed robbery.
The standard of review for sufficiency of evidence has been stated in State v. Heck, 560 So.2d 611, 614-615 (La.App. 4th Cir. 1990), writ denied 566 So.2d 395 (La.1990):
In evaluating the sufficiency of evidence to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781 [, 61 L.Ed.2d 560] (1979); State v. Jacobs, 504 So.2d 817 (La.1987). Where the conviction is based upon circumstantial evidence, R.S. 15:438 provides that such evidence must exclude every reasonable hypothesis of innocence. State v. Langford, 483 So.2d 979 (La.1986). R.S. 15:438 does not establish a stricter standard of review than the more general rational juror's reasonable doubt formula; it is merely an evidentiary guide for the jury when considering circumstantial evidence. State v. Porretto, 468 So.2d 1142 (La.1985).
Defendant contends that there was insufficient evidence because the State failed to show that he intended to rob Mr. Poret.
An armed robbery is defined by La.R.S. 14:64 as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La.R.S. 14:27 defines an attempt: "Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose."
Specific intent may be inferred from the circumstances of a transaction and from the action of the accused. State v. Graham, 420 So.2d 1126, 1127 (La.1982). Further, specific intent is a legal conclusion to be resolved by the fact-finder. Id., at 1128.
A principal is defined in La.R.S. 14:24 as follows:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission or directly or indirectly counsel or procure another to commit the crime, are principals.
Moreover, it is well-settled the "persons who aid and abet in the commission of a crime are guilty as principals although they do not directly commit the act constituting the offense." State v. Broussard, 312 So.2d 325, 327 (La.1975); State v. Baum, 533 So.2d 110, 111 (La.App. 4th Cir.1988).
The circumstantial evidence presented here supports the conclusion that the appellant was a principal in the armed robbery. He was waiting for the taxi with the gunman when Poret picked them up; Poret testified that while he was driving toward Second and Laurel Streets, the appellant said nothing but kept putting his hand under his shirt in a way that suggested to the driver that he had a gun. When the robber in the back seat put the gun in Mr. Poret's face and demanded his money, the appellant raised his hands so that the victim assumed he had a gun. Although the appellant never was shown to have a gun or never demanded anything of value from Poret, it is undisputed that he entered the taxi with the gunman, moved his hands under his shirt in a manner frightening to the taxicab driver, did not object to the demand for money or to the production of the gun by the other man, and moved aggressively toward the driver raising his hand as the driver fought to control the gun pointed at him. Finally, even though he had been shot several times, the appellant got out of the car and ran as soon as the taxi stopped.
The defense argues that because the appellant did not go in the same direction as the other robber when leaving the taxi, the appellant cannot be considered a principal in this case, citing several cases where the fact that the robbers left together was considered significant. However, the two "passengers" in this case did leave together: as soon as the taxi stopped, they both escaped albeit *82 in different directions. Appellant also cites State v. Dozier, 553 So.2d 911 (La.App. 4th Cir.1989), writ denied 558 So.2d 568 (La. 1990), where this Court overturned the conviction of a co-defendant for manslaughter and affirmed the other man's conviction for second degree murder because while the evidence indicated that there was marked hostility between the murderer and the victim, the evidence revealed none between the co-defendant and victim, and there was some evidence that the co-defendant was acting in self-defense. Here the two men together entered and departed the taxi; the inference is they were acting in concert when the attempted armed robbery occurred.
The Supreme Court recently considered a case in which a defendant convicted of manslaughter argued he was not a principal. In a situation where the jury had no direct or circumstantial evidence that an appellant counseled or procured others to commit a murder or that he participated in the actual crime, the Supreme Court reversed his conviction for manslaughter. State v. Pierre, 93-0893 (La. 2/3/94), 631 So.2d 427, 429. That case differs from the instant case, however, in that the evidence elicited at the Pierre trial indicated that appellant was outside in a van when the murder occurred in an abandoned house. In the instant case the appellant was with the gunman during the attempt, and he made no effort to stop the robbery or to leave.
The defendant was tried by a twelve-member jury of his peers. We find it was reasonable for the jury to infer from the circumstances presented that appellant intended to commit an armed robbery of Mr. Poret. Viewing all the evidence in a light most favorable to the prosecution, we find the appellant was a principal and we find that the evidence presented on the attempted armed robbery charge is clearly sufficient to sustain defendant's conviction.
Accordingly, for the above reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] In State v. Thomas, 92-1428 (La.App. 4th Cir. 5/26/94), 637 So.2d 1272, writ denied 94-1725 (La. 11/18/94), 646 So.2d 376 (La.1994), cert. denied ___ U.S. ___, 115 S.Ct. 1437, 131 L.Ed.2d 317 (1995), a supplemental police report indicated that a witness said defendant A had a handgun and defendant B had a rifle; however, when he testified, the witness stated that A had the rifle and B, the handgun. The defense argued that the supplemental report would have enabled it to impeach the credibility of the witness so that the outcome of the trial would have been different. Because the supplemental report in Thomas did not contain a "substantially verbatim recital" from the witness which could have been used to impeach his credibility and because the defendants' testimony established that the supplemental police report was erroneous, this Court found that the supplemental report could not be deemed Brady material.

In State v. Wolfe, 630 So.2d 872 (La.App. 4th Cir.1993), writ denied, 94-0448 (La. 10/28/94), 644 So.2d 648, the defendant complained that the State should have given him a copy of the police report which stated that he was charged with the distribution of two bags of heroin on July 23, 1982, whereas the State accused him of distributing three bags of heroin on July 30, 1982. This Court found that this report appeared to contain Brady material because evidence that the buy occurred on a different day and was for a different amount than that testified to by the witnesses would have impeached their credibility. However, this Court held that the evidence did not appear material since there was not a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. At trial a witness testified that he purchased heroin from the defendant. In light of this testimony, this Court held that there was not a sufficient probability that the outcome of the case was undermined.