IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-30870
_____


JOHN ASHLEY BROWN, JR.,

                                        Petitioner-Appellant,

                              versus

BURL CAIN, Warden, Louisiana State
Penitentiary, Angola, Louisiana,

                                        Respondent-Appellee,
                              and

RICHARD IEYOUB, Attorney General for the
State of Louisiana,

                                        Additional Respondent.

_____

Appeal from the United States District Court for the
Eastern District of Louisiana

_____

January 21, 1997

Before JOLLY, JONES and STEWART, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

John Ashley Brown, who is sentenced by the state of Louisiana to die, appeals the district court's dismissal of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. Brown insists that his conviction and death sentence are rendered unconstitutional by a list of alleged errors, including prosecutorial misconduct, ineffective assistance of counsel, and various defects in the jury instructions. Brown's most serious contention is that the jury's instruction on the "reasonable doubt" standard contained

constitutional error.  After a careful review of our precedent on this subject, we conclude that the district court did not err in rejecting this allegation and the other arguments that Brown makes.

I

On September 7, 1984, Mr. and Mrs. Omer Laughlin were returning to their parked car after dinner at a New Orleans restaurant.  Brown exited a nearby vehicle and confronted the Laughlins.  Brown pushed the couple against their car and demanded money from Mr. Laughlin.  As Mr. Laughlin handed over his wallet, Mrs. Laughlin screamed and ran back toward the restaurant.  When Mrs. Laughlin returned shortly thereafter, Mr. Laughlin was dead. He had been stabbed 13 times.

Mrs. Laughlin gave the police a description of Brown, and also of the vehicle he had been sitting in before the attack.  Mrs. Laughlin told police that a woman with dark hair had been driving the car.  A short time later, an off-duty police officer, who had heard the crime reported on his police radio, noticed the car as it pulled into a service station.  After watching Brown washing his hands at a water hose, the officer apprehended Brown and his companion, Anna Hardeman.  The officer observed blood, scratches and other marks on Brown's forearms, and blood on Brown's feet.  A New Orleans Shopper's card belonging to Omer Laughlin was visible on the floor of the car.  Mr. Laughlin's wallet and the murder weapon, a Bowie knife, were later found in the car.  Mrs. Laughlin identified Brown from line-up photographs as the man who had assaulted her husband.

On September 20, Brown and Hardeman were indicted for first degree murder. Hardeman entered into an agreement to plead guilty to a lesser charge of accessory after the fact. In April 1985, Hardeman's counsel filed a motion concerning Hardeman's right to a speedy trial, in an apparent attempt to get Hardeman released pending Brown's trial. At a hearing on the motion, the prosecutor stated that Hardeman was "no longer cooperating with the state's prosecution" and that any prior plea bargaining agreement was "no longer in effect." Brown's trial began before a jury on June 13. On the first day, the charges against Hardeman were severed, and the prosecutor stated that Hardeman would be tried separately.

During the guilt phase of the trial, Brown did not call any witnesses to testify on his behalf. He conceded that he had committed the acts in question, but argued that he lacked the requisite intent to be convicted of first degree murder, claiming intoxication. The jury found Brown guilty of the premeditated murder of Omer Laughlin. A penalty phase to determine Brown's sentence immediately followed. During the penalty phase, Brown argued that he should not be sentenced to death because his actions were partly attributable to his intoxication on the night he attacked Laughlin, his longstanding drug addiction, and his generally underprivileged childhood.

Brown called several witnesses during the penalty phase. Brown's mother testified to Brown's impoverished childhood and his early drug problems. Brown's sister similarly testified to Brown's

childhood problems. Brown's sister also stated that Brown was a heavy drug user in 1984, that he took drugs intravenously, and that he behaved strangely when he was using drugs. In 1984, the sister indicated, Brown was regularly using Mandex (a bootleg quaalude), cocaine, and heroin. Brown presented expert testimony concerning the effects of his drug use.

Brown also called Hardeman to testify on his behalf during the penalty hearing. Hardeman took the stand, but after a few preliminary questions, the prosecutor interrupted the examination and requested that the court determine whether Hardeman had consulted with her attorney concerning her Fifth Amendment rights. At this point, Hardeman had not yet pled guilty, although she later did so under a plea bargaining agreement. Hardeman's testimony was suspended, and the court summoned Hardeman's attorney, who advised her to exercise her right against self-incrimination. When Hardeman resumed the stand, the court permitted her to invoke the Fifth Amendment over Brown's objection.

The prosecution contested Brown's claim that he was addicted to drugs. During cross-examination, the prosector elicited a concession from Brown's expert that Brown showed no physical signs of intravenous drug use. The prosecution called its own psychiatrist who testified that Brown did not have track marks, a scarring caused by intravenous drug use, and that Brown's prison records following his arrest did not reveal signs of physical withdrawal.

4

After deliberating, the jury unanimously decided that Brown should be sentenced to death.  The jury found two statutory aggravating factors: (1) the murder was committed during the perpetration of an armed robbery, and (2) the offense was committed in an especially heinous, atrocious, and cruel manner.

Brown appealed his conviction and sentence to the Louisiana Supreme Court, which affirmed.  State v. Brown, 514 So.2d 99 (La. 1987), cert. denied, 486 U.S. 1017 (1988).  Then, in 1988, Brown began post-conviction proceedings in state court, where he was represented by a new team of appointed counsel.  Evidentiary hearings in Brown's state habeas proceedings were held in March and May of 1993.  The state trial court denied the application for post-conviction relief in a written order entered August 9, 1993.  State ex rel Brown v. Whitley, No. 303-750 (La. Dist. Ct., Orleans Parish, August 9, 1993)(unpublished).  The Louisiana Supreme Court denied Brown's petitions for supervisory and remedial writs in April 1995, and denied reconsideration in June 1995.  Brown was subsequently scheduled for execution on July 28, 1995.

After an initial dismissal for incomplete exhaustion and an unsuccessful return to state court, Brown refiled his federal application for habeas relief and was granted a stay of execution. The district court reviewed Brown's twenty-two claims for relief in an exhaustive opinion, concluding that Brown's application failed to demonstrate any constitutional defect in his conviction or sentence.  Brown v. Cain, 1995 WL 495890 (E.D. La. August 18, 1995).  The district court later entered a stay of execution

5

pending appeal and issued a certificate of probable cause. <u>Brown v. Cain</u>, 1995 WL 527632 (E.D. La. September 1, 1995).

                                        III

Brown raises three contentions that merit analysis our consideration. First, Brown argues that certain acts of the prosecution amount to prosecutorial misconduct that materially affected the outcome of the trial. Second, Brown insists that he was denied effective assistance of counsel. Third, Brown argues that the jury instruction on reasonable doubt was constitutionally defective.[1]

Before addressing Brown's arguments, we must examine the requirements imposed upon us by the recently enacted the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996), which was signed into law by the President on April 24, 1996. The AEDPA substantially amends the federal habeas corpus provisions of Title 28. Two changes, in particular, are important to Brown's appeal: the requirement that a habeas petitioner obtain a "certificate of appealability" ("COA"), and the deferential

---

[1]Brown raises a list of additional issues not addressed at oral argument: that his sentence was unreliable; that he was denied effective assistance of appellate counsel; that the verdict form's use of "recommends" rather than "determines" violated his Eighth Amendment rights; that including the word "unanimous" on the life sentence verdict form but not on the death sentence form violated the Sixth, Eighth, and Fourteenth Amendments; and that the jury was inadequately instructed on the consideration of mitigating evidence. Having reviewed the record, the parties' briefs, and the reasoned opinion of the district court, we find these issues to be without merit.

6

standard of review imposed upon the federal courts when reviewing claims adjudicated on the merits in a state proceeding.

In Drinkard v. Johnson, 97 F.3d 751 (5th Cir. 1996), we held that the habeas amendments enacted by the AEDPA apply to cases pending before us on April 24, 1996, when the President signed the AEDPA into law. Specifically, we held that a habeas appellant's application for a "certificate of probable cause" ("CPC"), the procedural requirement before the AEDPA was enacted, appropriately could be treated as an application for a COA, without violating the dictates of Landgraf v. USI Film Products, 511 U.S. 244, 114 S.Ct. 1483 (1994). Drinkard, 97 F.3d at 756.

In Landgraf, the Supreme Court indicated that "changes in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity" because procedural rules regulate "secondary" rather than "primary" conduct. 511 U.S. at ___, 114 S.Ct. at 1502. The Court noted, however, that "the mere fact that a new rule is procedural does not mean that it applies in every pending case." 511 U.S. at ___ n.29, 114 S.Ct. at 1502, n.29. The Court observed that with "procedural" rules, "the applicability of such provisions ordinarily depends upon the posture of the particular case." Id. The reviewing court must consider the concerns central to retroactivity analysis: whether the new rule "attaches new legal consequences" to events completed before its enactment, and whether application of the new rule would upset settled expectations, disturb a party's reasonable reliance upon the "old" rule, or work a fundamental injustice.

7

In <u>Drinkard</u>, we concluded that because the standard for issuing a COA under the AEDPA required the same showing as the standard under which CPCs were previously issued, no retroactivity issue was actually raised: the difference was simply one of nomenclature. <u>Drinkard</u>, 97 F.3d at 756. Here, however, Brown had already obtained a CPC before the AEDPA was enacted. Brown had requested and received the right to appeal; his "settled expectation" was that he had successfully passed all procedural hurdles to this court's consideration of his claims. <u>Landgraf</u> offered a nearly identical example: "[a] new rule concerning the filing of complaints would not govern an action in which the complaint had already been properly filed . . ." 511 U.S. at ___ n.29, 114 S.Ct. at 1502 n.29. Although the required showing is the same, the AEDPA states that COAs must be issued by a circuit judge, although this may be open to some dispute.[2] Applying the AEDPA's COA requirement to Brown in a technical fashion would clearly raise retroactivity concerns. We therefore hold that the COA requirement of the AEDPA will not apply to habeas appellants who have *already obtained* CPCs.

More importantly for our purposes, the AEDPA amended 28 U.S.C. § 2254, clarifying the level of deference that a federal court must give to the prior judgments rendered by a state court on the merits of a habeas petitioner's claims:

---

[2]As we noted in <u>Drinkard</u>, there is an apparent discrepancy between the amended § 2253 and the amended version of Rule 22(b) of the Federal Rules of Appellate Procedure, which appears to allow a COA to be issued either by a district or circuit judge. <u>Drinkard</u>, 97 F.3d at 755-56 n.4.

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or *involved an unreasonable application of, clearly established Federal law*, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

AEDPA, § 104(3) (to be codified at 28 U.S.C. § 2254(d)) (emphasis added). In <u>Drinkard</u>, we interpreted the second clause of subsection (d)(1) to apply to challenged applications of law to fact. For such claims, we concluded, the amended provision permits federal court relief "only when it can be said that reasonable jurists considering the question would be of one view that the state court ruling was incorrect." <u>Id.</u>, 97 F.3d at 769. With this requirement of substantial deference in mind, we address each of Brown's principal arguments in turn.

A

Brown raises three charges of "prosecutorial misconduct." Brown argues that (1) the prosecution improperly manipulated Hardeman to prevent her from testifying on Brown's behalf concerning his drug addiction and drug use on the night in question, (2) the prosecution withheld exculpatory evidence subject to disclosure, and (3) the prosecution improperly "gave a false impression" to the jury by disputing Brown's claims of intoxication and drug addiction.

9

(1)

A prosecutor may not intimidate a witness into invoking the Fifth Amendment in order to interfere with a criminal defendant's right to compulsory process. United States v. Whittington, 783 F.2d 1210, 1219 (5th Cir.), cert. denied, 479 U.S. 882, 107 S.Ct. 269 (1986). However, a witness' right against self-incrimination will outweigh a defendant's right to force that witness to testify. Id. at 1218-19 ("the defendants' sixth amendment rights do not override the fifth amendment rights of others") (citing United States v. Lacouture, 495 F.2d 1237 (5th Cir.), cert. denied, 419 U.S. 1053, 95 S.Ct. 631 (1974)). Brown does not dispute the Louisiana Supreme Court's conclusion that Hardeman could invoke her right against self-incrimination in the absence of a plea agreement. Instead, Brown insists that Hardeman did have an enforceable plea agreement and therefore had nothing to fear from self-incrimination at the time of trial.

During Brown's entire trial, Hardeman remained under indictment for first degree murder, and she had not yet pled to this or any other charge. In Brown's direct appeal, the Louisiana Supreme Court concluded that "[c]learly she had reasonable cause to apprehend danger from direct answers concerning her whereabouts and contacts with Brown on the day of the murder." State v. Brown, 514 So.2d at 109. In his state habeas proceeding, Brown insisted the Louisiana Supreme Court had not properly considered his argument that Hardeman had an enforceable plea agreement at the time she invoked the Fifth Amendment. Brown points to an altercation

10

between the prosecutor and Hardeman's attorney, during which the prosecutor allegedly threatened to "pull the deal," as evidence that an enforceable "deal" protected Hardeman.

In Brown's post-conviction proceedings, the state trial court considered and rejected this argument as a factual matter. During Brown's post-conviction evidentiary hearing, Hardeman's attorney testified that he believed there was a deal in place before Brown's trial, but still advised Hardeman to take the Fifth out of caution. The state court rejected this statement, stating that "[t]he fact that Mr. Meyer, counsel for Ms. Hardeman, advised Ms. Hardeman to invoke her Fifth Amendment privilege at the trial of petitioner leads this Court to believe that he had grave doubts about the enforceability of any plea bargain agreement." State ex rel Brown v. Whitley, No. 303-750 (La. Dist. Ct., Orleans Parish, August 9, 1993) (unpublished). The court further noted the prosecutor's statements at Hardeman's speedy trial motion hearing, and the lack of any evidence in the record that a plea bargain agreement existed. Id.

The district court deferred to the state court's conclusions on this disputed factual issue, as must we. The state court was required to assess the credibility of the witnesses who testified at Brown's evidentiary hearing, and we will not dispute that court's conclusions. We cannot say that the state court's factual determination was "unreasonable," and Brown therefore fails to make the showing required for relief under the amended § 2254(d).

11

(2)

Brown further cites "prosecutorial misconduct" in the prosecution's failure to turn over "exculpatory evidence" of Brown's intoxication and drug abuse history, in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 (1963). The bulk of the information Brown insists should have been turned over was obviously known and available to Brown himself. The prosecution had no obligation under Brady to produce for Brown evidence or information already known to him, or that he could have obtained from other sources by exercising reasonable diligence. United States v. Dula, 989 F.2d 772, 775 n.7 (5th Cir.), cert. denied, 510 U.S. 859, 114 S.Ct. 172 (1993); United States v. Bermea, 30 F.3d 1539, 1574 (5th Cir. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1113 (1995).

The only evidence that arguably was withheld improperly under Brady was the statement of the service station attendant, Edward White, Jr., who stated that Brown appeared "kinda high" and that Brown's speech was somewhat slurred. Brown insists that this statement is critical "non-specific statutory mitigating evidence" that would have been relevant to the penalty phase. As the district court observed, however, White's statement also indicates that Brown specifically requested permission to use the station's water hose, and that Brown evaded White's inquiries concerning why Brown was covered with blood. As such, whether White's statement was exculpatory or mitigating is open very much to question.

12

On post-conviction review, the state trial court held evidentiary hearings and reviewed the district attorney's file--containing White's statement--to determine whether Brady material was withheld. The court then rejected Brown's Brady challenges. Whether evidence must be produced under Brady presents a mixed question of law and fact that was adjudicated on the merits by the state court, and its determination that no Brady violation occurred was not "an unreasonable application of clearly established federal law."

The statement was not clearly exculpatory, and neither the Supreme Court nor this court has clearly held that statements of individuals known by the defense to have personal knowledge of relevant events must be delivered under Brady, where the defense is equally free to conduct an interview. See, e.g., United States v. Fogg, 652 F.2d 551, 559 (5th Cir. 1981), cert. denied, 456 U.S. 905, 102 S.Ct. 1751 (1982) (holding no Brady violation where prosecution failed to turn over grand jury testimony of individuals who were friends of defendant). Additionally, we agree with the district court that *even if* the prosecution improperly withheld the statement, Brown has failed to demonstrate a constitutional violation because he has not demonstrated a "reasonable probability" that, had the evidence been disclosed, the result would have been different. See Kyles v. Whitley, ___ U.S. ___, 115 S.Ct. 1555, 1565 (1995).

13

(3)

Finally, Brown argues that "prosecutorial misconduct" violated his constitutional rights because the government knowingly gave the jury a false impression that there was no evidence to substantiate Appellant's addiction to drugs and intoxication. Brown focuses on the prosecution's examination of the medical experts, where the prosecution elicited testimony that Brown did not have track marks and had not experienced withdrawal following his arrest. Brown insists this was unconstitutionally misleading because the examinations (for track marks) did not take place until months after his arrest. Brown ignores the review of his records back to the time of his arrest, and does not indicate why any "misleading" impression was not corrected on cross or redirect examination. Brown's allegations of misconduct in this respect clearly fail. Brown's addiction and intoxication were centrally disputed issues, and the prosecution was not obligated to accept as true Brown's claim that he was intoxicated based upon the statements of Brown and Hardeman.

B

Brown next contends that his conviction and sentence are unconstitutional because he was denied effective assistance of counsel. Specifically, Brown argues that he was denied effective counsel because (1) his counsel failed adequately to investigate his background, including school, medical and juvenile records, and to interview additional acquaintances and employers, (2) counsel

14

failed to deliver such records to his psychiatric expert, and (3) counsel failed to retain a toxicologist as an expert witness.

Ineffective assistance of counsel claims are analyzed under the two-prong test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984). Under Strickland, Brown must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense such that he was deprived of a "fair trial, a trial whose result is reliable." Id. at 687, 104 S.Ct. at 2064. Brown was represented at trial by two competent attorneys with substantial experience in capital cases. Brown's demonstration that they were ineffective must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689, 104 S.Ct. at 2065.

Both the state trial court in Brown's post-conviction proceedings and the district court below considered Brown's arguments at length and found them unavailing. Both courts found that Brown's attorneys' investigation was not deficient, and that additional testimony concerning Brown's drug use and deprived past would simply have been cumulative to the testimony of Brown's mother and sister. The state court specifically found that this alleged deficiency "fails to rise to the level of Strickland." State ex rel Brown v. Whitley, No. 303-750 (La. Dist. Ct., Orleans Parish, August 9, 1993) (unpublished). We agree with this conclusion.

15

Brown attempts to substantiate his argument that his psychiatric expert was inadequately educated by pointing to the testimony of Dr. Alec Whyte during the post-conviction evidentiary hearing in state court. Dr. Whyte essentially testified that Brown suffered from certain mental disorders that were not revealed in expert testimony at trial. Brown suggests that his trial expert must have been inadequately educated on his background, or he, too, would have reached the same conclusion. The state court, however, dismissed Whyte's testimony, observing that Whyte was the *only* expert among *five retained by Brown* who concluded that Brown suffered from the identified disorders. Id. This evidence is simply inadequate to establish a constitutional violation under Strickland.

Brown's argument that counsel was constitutionally ineffective by failing to retain a toxicologist--particularly at a time when toxicologists were not commonly retained for criminal trials--is unavailing. As the state court correctly concluded, neither the Sixth Amendment nor Strickland demanded that Brown's counsel retain an expert with the label "toxicologist." Id.

All of Brown's "ineffective assistance" issues involve the application of existing law to the facts of Brown's case. His arguments were presented fully to the state court during his post-conviction proceeding, and the court adjudicated his claims on the merits. With respect to each argument raised here, the state court specifically found that the alleged deficiency *did not rise to the level of a Strickland violation*. We cannot say that the state

16

court's considered judgment was based upon an unreasonable application of clearly established federal law--in fact, we find it was unquestionably correct.

C

We turn now to Brown's most serious contention:  that the trial court incorrectly instructed the jury on the "reasonable doubt" standard.  Brown argues that the reasonable doubt instruction was unconstitutional under the Supreme Court's decision in Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328 (1990) (per curiam), and that this error requires that his petition for habeas relief be granted.  We find that Brown is incorrect on both points.

(1)

Once a criminal defendant's conviction has been affirmed in the state appeals process, and no additional appeals may be taken, the conviction is "final."  Without a strong showing of error, the conviction must be considered to have been fully and fairly adjudged.  The writ of habeas corpus, which allows a court to vacate a conviction after it has become final, serves a unique and limited purpose.  As the Supreme Court explained in Teague v. Lane, the writ ensures the fundamental fairness of criminal proceedings by acting as "a necessary additional incentive for trial and appellate courts throughout the land to conduct their proceedings in a manner consistent with established constitutional standards." 489 U.S. 288, 306, 109 S.Ct. 1060, 1073 (1989) (plurality opinion) (quoting Desist v. United States, 394 U.S. 244, 262-3, 89 S.Ct. 1030, 1041 (1969) (Harlan, J., dissenting)).

17

The Court in <u>Teague</u> reiterated that the purpose of the writ is satisfied if habeas review determines that the conviction rests upon a correct application of constitutional law at the time the conviction became final. <u>Id.</u>, 104 S.Ct. at 1073. Accordingly, "new" constitutional rules are retroactively applied to criminal cases that became final before the rule was announced only in two circumstances. First, if the rule "places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," the new interpretation may be applied to cases on collateral review. <u>Id.</u> at 311, 109 S.Ct. at 1075. Second, if the new ruling establishes a "watershed" rule of criminal procedure that implicates the "fundamental fairness and accuracy of the criminal proceeding," justice requires that it be applied retroactively. <u>Id.</u>, 109 S.Ct. at 1076.

<u>Cage</u> was decided in 1990, *after* the Louisiana Supreme Court had affirmed Brown's conviction in an extensive and reasoned opinion. Brown's access to federal habeas relief on <u>Cage</u> grounds is therefore controlled by <u>Teague</u>. In <u>Skelton v. Whitley</u>, 950 F.2d 1037 (5th Cir.), <u>cert. denied</u>, 506 U.S. 883, 113 S.Ct. 102 (1992), we considered whether <u>Cage</u> introduced a "new rule" within the meaning of <u>Teague</u>, and, if so, whether it fell within the second <u>Teague</u> exception. <u>Skelton</u> first held that <u>Cage</u> created a "new rule" subject to <u>Teague</u> limitations. <u>Skelton</u> further held that the new rule did not fall within the second exception, because the inadvertent dilution of the reasonable doubt standard caused by a <u>Cage</u> error did not seriously diminish the likelihood of obtaining

18

an accurate verdict.  Id. at 1043, 1045.  The state court in Brown's post-conviction proceeding concluded on the basis of Skelton that Brown could not raise a Cage challenge to his reasonable doubt instruction.  State ex rel Brown v. Whitley, No. 303-750 (La. Dist. Ct., Orleans Parish, August 9, 1993) (unpublished).

Brown argues that Skelton was implicitly overruled by the Supreme Court's subsequent decision in Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078 (1993), which again addressed the issue of Cage errors.  In Sullivan, the Court unanimously held that a constitutionally defective instruction on the reasonable doubt standard is not subject to "harmless error" review.  Id. at 281, 113 S.Ct. at 2082.  A Cage error, the Court indicated, creates a "structural error" in the trial, undermining a "basic protection . . . without which a criminal trial cannot reliably serve its function."  Id. at 281, 113 S.Ct. at 2083 (internal quotation omitted).

Brown argues that the Court's holding in Sullivan "directly undermines" the analysis in Skelton, which had concluded that Cage error was not of a "structural" nautre.  Brown's argument, however, has already been rejected by this court.  In Smith v. Stalder, No. 93-3683, (5th Cir. June 16, 1994) (per curiam) (unpublished), the court refused habeas relief on Cage grounds in a similar case.  The court took note of Sullivan, but concluded that it did not speak to the issue decided by Skelton: "Sullivan was a direct appeal . . .

19

[it] did not discuss the retroactive application of <u>Cage</u> because the question was not an issue in the case." <u>Id.</u>

Although <u>Smith</u> was an unpublished decision, we are bound by its holding. See Local Rule 47.5.3 ("Unpublished opinions issued before January 1, 1996 are precedent"). A panel is not at liberty to disagree with the decision of a prior panel. Absent action by the Supreme Court, any error Brown sees in <u>Smith</u> may be corrected only by this court sitting en banc. <u>FDIC v. Dawson</u>, 4 F.3d 1303, 1307 (5th Cir. 1993), <u>cert. denied</u>, ___ U.S. ___, 114 S.Ct. 2673 (1994); <u>Burlington Northern R.R. v. Brotherhood of Maintenance of Way Employees</u>, 961 F.2d 86, 89 (5th Cir. 1992), <u>cert. denied</u>, 506 U.S. 1071, 113 S.Ct. 1028 (1993). Accordingly, we hold that Brown may not invoke <u>Cage</u> to attack his conviction on collateral review.

(2)

Although we conclude that, under Fifth Circuit precedent, <u>Teague</u> bars the consideration of Brown's <u>Cage</u> challenge on collateral review, we are persuaded to consider the federal district court's alternate ground of dismissal, which was not addressed by the state courts: that Brown failed to demonstrate that the jury instruction was unconstitutional under <u>Cage</u>. We agree.[3]

---

[3]We need not address whether the AEDPA's deferential standard applies to *alternative* grounds of decision that the state courts did not reach in rejecting a habeas petitioner's claim for relief, because we find that Brown's argument that his reasonable doubt instruction was unconstitutional fails regardless of the standard of review we apply. We note that the Seventh Circuit has determined that the AEDPA's deferential standard *would* apply, <u>Lindh v. Murphy</u>, 96 F.3d 856, 874-5 (7th Cir. 1996), but we leave that question for another case.

In Cage, the U.S. Supreme Court concluded that a Louisiana jury instruction on reasonable doubt was constitutionally defective because it improperly raised the degree of "doubt" that would demand acquittal in a criminal trial to something more than "reasonable" doubt. The challenged instruction in Cage read:

> If you entertain a reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your duty to give him the benefit of that doubt and return a verdict of not guilty. Even where the evidence demonstrates a probability of guilt, if it does not establish such guilt beyond a reasonable doubt, you must acquit the accused. This doubt, however, must be a reasonable one; that is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture. *It must be such doubt as would give rise to a grave uncertainty*, raised in your mind by reasons of the unsatisfactory character of the evidence of lack thereof. A reasonable doubt is not a mere possible doubt. *It is an actual substantial doubt*. It is a doubt that a reasonable man can seriously entertain. What is required is not an absolute or mathematical certainty, but a *moral certainty*.

111 S.Ct. at 329 (emphasis added by U.S. Supreme Court). The Court considered the instruction as a whole, and noted that the use of words such as "substantial" and "grave" could suggest a higher degree of doubt than "reasonable doubt." The Court then found that these references, added to the suggestion that the jury might convict upon the basis of a "moral" rather than "evidentiary" certainty, created a likelihood that a reasonable juror might have found guilt upon something less than the Due Process Clause demanded. Id. at 330.

Brown argues that the reasonable doubt instruction in his case was similarly unconstitutional. During Brown's trial, the jury was instructed, in relevant part, that:

21

> If you entertain a reasonable doubt as to any fact or element necessary to constitute the guilt of the defendant, it is your sworn duty to give him the benefit of the doubt and return a verdict of not guilty. This doubt, however, must be a reasonable one, that is, one founded upon a real, tangible, substantial basis and not upon mere caprice, fancy, or conjecture. It must be such a doubt as would give rise to a grave uncertainty raised in your mind by the unsatisfactory character of the evidence. Likewise, if the State has proved the guilt of the defendant to your satisfaction and beyond a reasonable doubt, it is your duty to return a verdict of guilty.

Brown argues that because his reasonable doubt instruction contains one of the phrases, i.e., a reference to "grave uncertainty," that the Supreme Court scrutinized in finding the Cage instruction unconstitutional, his instruction must also be declared unconstitutional. We disagree.

The Supreme Court determined that the Cage instruction was unconstitutional after it had examined the instruction *as a whole*, which is the general rule applied in reviewing a challenged jury instruction. We will similarly examine Brown's jury charge as a whole in order to determine whether it is unconstitutional under the reasoning of Cage.

Although Brown's instruction does contain an identical "grave uncertainty" comment, the trial court in Brown's case clearly did not equate "reasonable doubt" with "actual substantial doubt." The instruction employs the "grave uncertainty" comment in reference to an admonition that reasonable doubt itself should be based upon the evidence or lack thereof: ". . .upon a real, substantial basis and *not upon mere caprice, fancy, or conjecture* . . . [i]t must be such doubt as would give rise to a grave uncertainty raised in your mind

22

*by the unsatisfactory character of the evidence*." (Emphasis added). Furthermore, the court never suggested that the jury might convict on the basis of a "moral certainty." In short, the trial court's charge to the jury includes only one of the questionable phrases challenged in <u>Cage</u>, while the surrounding text of the charge is unobjectionable and *repeatedly* reiterates that the standard is "reasonable doubt," and that verdict must be reached upon the evidence alone.[4]

---

[4]The instruction was insistent in its repetitious description of the State's burden as proof beyond a reasonable doubt, and also reminded the jurors at several points that they could base their verdict only upon the evidence presented:

> Now, a person accused of a crime is presumed by our law to be innocent until each element of the crime necessary to constitute his guilt is proven beyond a reasonable doubt. It is the duty of the jury in considering and applying to that evidence the law as given by the Court to give the defendant the benefit of every reasonable doubt arising out of the evidence or lack of evidence in the case. It is the duty of the jury if not convinced of the guilt of the defendant beyond a reasonable doubt to find him not guilty. The defendant is not required to prove his innocence, but may rest upon the presumption of innocence until it is overthrown by positive, affirmative proof offered by the State. The burden, therefore, is upon the State to establish to your satisfaction and beyond a reasonable doubt, the guilt of the defendant as to the crime charged. If you entertain a reasonable doubt as to any fact or element necessary to constitute the guilt of the defendant, it is your sworn duty to give him the benefit of the doubt and return a verdict of not guilty. This doubt, however, must be a reasonable one, that is, one founded upon a real, tangible, substantial basis and not upon mere caprice, fancy, or conjecture. It must be such a doubt as would give rise to a grave uncertainty raised in your mind by the unsatisfactory character of the evidence. Likewise, if the State has proved the guilt of the defendant to your satisfaction and beyond a reasonable doubt, it is your duty to return a verdict of guilty . . . You are to find from the evidence which facts have been proved and which facts have not been proved . . . Evidence includes sworn

23

<u>Cage</u> found the connections between the three challenged phrases critical: "[w]hen those statements *are then considered with the reference to 'moral certainty,' rather than evidentiary certainty*, it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based upon a degree of proof below that required by the Due Process Clause." 498 U.S. at 41, 111 S.Ct. at 330 (emphasis added). In fact, in a later case the Supreme Court found two different reasonable doubt instructions, one containing the phrase "moral certainty" and the other citing "substantial doubt," to be constitutional when the instructions were considered as a whole. <u>Victor v. Nebraska</u>, 511 U.S. 1, ___, 114 S.Ct. 1239, 1247, 1250 (1994). The Court observed that its opinion in <u>Cage</u> did *not* hold that the three challenged phrases were *each* unconstitutional: "we did not hold that the reference to substantial doubt alone was sufficient to render the instruction unconstitutional. 511 U.S. at ___, 114 S.Ct. at 1250. Although the Court disapproved of the use of the ambiguous "moral certainty," the Court noted that, on review, "the moral certainty language cannot be sequestered from its surroundings," and concluded that the instruction as a whole properly charged the jury on their duty to consider the evidence. 511 U.S. at ___, 114 S.Ct. at 1248.

---

testimony of witnesses, exhibits admitted into the record, and facts which may have been stipulated to by the attorneys for the State and the defense. You cannot consider as evidence any statements made by the lawyers during the trial. You cannot go beyond the evidence just referred to to convict the defendant of the crime charged.

24

Considered in its entirety, the instruction in <u>Cage</u> appeared to create a downward swing in the prosecution's burden of proof: the instruction began appropriately with "reasonable" doubt, moved to "grave uncertainty," and then to "substantial" doubt, and concluded by suggesting that the jury could convict on the basis of a "moral certainty" rather than an evidentiary certainty. The challenged portion of Brown's jury charge, by contrast, begins and ends with "reasonable" doubt, and indicates clearly that the State must *prove* guilt beyond a reasonable doubt--with no suggestion that a "moral certainty" might suffice in the absence of evidentiary proof. We also note that, later in the charge, the jury was reminded of the severity of the State's burden with the admonition that Brown should not be convicted "unless the facts proved by the evidence exclude every reasonable hypothesis of his innocence." Thus, there is a vast difference between the charge given in the case before us and the charge given in <u>Cage</u>.

Furthermore, the standard of appellate review applied by the Court in <u>Cage</u> has been modified by the Court's decision in <u>Estelle v. McGuire</u>, 502 U.S. 62, 112 S.Ct. 475 (1991). The question, as <u>Estelle</u> explained, is not whether there is a possibility that a juror "could have" applied the instruction in an unconstitutional manner, but whether there is a "reasonable likelihood" that the jury *did* apply the instruction unconstitutionally. <u>Id.</u> at 61 & n.4, 112 S.Ct. at 482 & n.4; <u>Victor</u>, 511 U.S. at ___, 114 S.Ct. at 1243. Given the trial court's numerous references to "reasonable doubt" and the severity of the State's evidentiary burden, we

25

conclude that there is no reasonable likelihood that the jury applied the challenged instruction in an unconstitutional manner.

## IV

In conclusion, Brown has failed to establish that his conviction and sentence are unconstitutional. His various claims have been fully and fairly adjudicated both in the Louisiana state courts and by the district court below. The judgment of the state court concerning Brown's allegations was neither "contrary to" nor "involved an unreasonable application of" clearly established federal law. Nor was the state court's decision "based on an unreasonable interpretation of the facts." Brown's petition for habeas relief under 28 U.S.C. § 2254 therefore fails. We AFFIRM the judgment of the district court, and hereby VACATE the stay of execution granted pending appeal.

AFFIRMED; stay VACATED.